This is 4090463 Rosewood Care Center of Peoria v. The Illinois Department of Public Health. We have for the appellant, Dan Maher and Jan Hughes. Jan Hughes. I switched. Alright. Would the court rather go? No. Please proceed. Thank you. Your Honors, sometimes an appeal comes along where once you get into briefing a case turns out to be something different than you think it is. And this is one such case. While we were briefing this case on the merits of whether Rosewood violated the Nursing Home Act and how much of a fine the department can assess, I discovered that the department took about 300 days to issue its decision after the hearing closed. In reliance on this court's decision in Lincoln Manor and the 3rd District decision in Francis House, we wanted to bring this issue to the court's attention. Both of those cases held that Section 3707 of the Act was mandatory. That provision says that the director has 30 days to issue a decision at the end of the hearing unless more time is needed and in that case not to exceed an additional 90 days. Francis House and this court in Lincoln Manor held that that 120 day limit was mandatory and that in those cases a director lost jurisdiction to issue a decision once that 120 day period has passed. We also brought to this court's attention in this case there was a motion to dismiss that was brought at the hearing orally and the ALJ at the hearing said that the parties could have time to brief the motion to dismiss at the end of the hearing and that she would rule on the motion to dismiss and the merits, the evidence of the case all at once. The briefing continued and in fact the reply brief that Rosewood filed was filed in September and that would be after the 120 day period. So we have brought to this court's attention the possibility that the motion to dismiss somehow told this 120 day period or extended it in some fashion. We recognize... I was going to ask you, even if you thought it might told it, the final brief was filed September 17th and the decision didn't issue until April 3rd of 2008. That's 199 days. I think it was 175 days actually. But we recognize that and we also in our brief brought that to the court's attention. So we just wanted to let the court know that the motion to dismiss was pending and whether that alone distinguishes it from Francis House and Lincoln Manor. It's just a factor that we wanted the court to be aware of. Why wasn't the issue of the timing raised in the trial court? I'm sorry? Justice Puff, the only thing I can think is that it just wasn't considered by the attorneys in the trial court. And that's all I know. And obviously if it's a jurisdictional issue, it can't be waived. The court on its own, if we hadn't recognized the problem, could have raised the issue itself and dealt with it. But the only thing that I can think of is it just wasn't raised by the parties and it wasn't recognized by the ALJ or the acting deputy director either. And I think that the reason that it wasn't recognized at the department level is because this is such an aberration. Francis House was decided in 1995. Lincoln Manor was decided in 2005. Obviously this is not something that the department does on a regular basis. I think that this case is an aberration. And certainly the department makes that 120-day period. And in this case, for whatever reason, perhaps the ALJ was unaware how courts had interpreted Section 3707. I'm not sure. And as far as the trial court, I can only assume that the parties just didn't recognize it for whatever reason. I assume the department is now aware of the 120 days? Yes. And I think that we can't assume that the department hasn't been aware of that. And again, I think for whatever reason, this was just an aberration. And the particular ALJ involved, I just don't know. That's all I can think of. Other than the distinction that you mentioned, is there any other distinction you can make as to why Lincoln Manor would not apply here? I don't see that there would be. I don't see that there would be. It's the same statute, Section 3707. It's the same agency, obviously. And I don't know that there would be any other way to distinguish it. Do you believe that in Lincoln Manor, the court made a mistake of law? I'm sorry, could you speak up, please? Did the court make a mistake of law in Lincoln Manor? We did not argue that. And I think that was because Francis House was obviously out there, existing, when the Lincoln Manor case came to this court. The Attorney General's office on behalf of the department in Lincoln Manor made arguments as to why Francis House was wrong. And this court rejected those arguments. We would have no other arguments other than the ones that were made and rejected by this court before. So you don't believe that this court would have the authority to find the language here directory rather than mandatory because the injured party would be prejudiced here? Well, certainly I think if this court on its own believes that there is something in this case that distinguishes it from Lincoln Manor, then obviously this court on its own could make that decision that perhaps the Lincoln Manor case was wrongly decided. You know, this court is not bound by the arguments that we made. We made a decision that these arguments why Francis House was wrong were made to this court and rejected in Lincoln Manor. And Lincoln Manor was precedent for this case. And again, obviously, if this court believes otherwise, it's free to find that Section 3707 is directory. I have not looked at, I have not shepherdized Lincoln Manor. I assume PLA was not sought or was denied? I do check all the cases that I cite and apparently we did not seek re-hearing or file a petition for leave to appeal. If this court finds that Lincoln Manor is dispositive, we would ask this court, obviously the result would be that the acting deputy director's decision is void. That's what Francis House and Lincoln Manor held. If that is the ruling by this court, then the obvious result is that it's as if the decision never existed. There could not have been a circuit court decision based on it and we ask this court to vacate both the circuit court decision and the administrative decision. And again, as we said in our brief, this is not a result that anyone is happy with and including probably the court. Is the department allowed to file another violation against this nursing home or is it precluded by this prior hearing? On these same facts, I'm unaware that they would have the authority to do that. Counsel, you said that you're asking this court if we find Lincoln Manor dispositive to vacate the circuit court decision. Correct. And vacate, what else did you say? I'm sorry, the acting deputy director's decision. Why would we vacate the latter? Based on the precedent, it would be because the director lost jurisdiction to issue a decision after the 120-day period had passed. And that was a result in Francis House and Lincoln Manor. Is that what this court did in Lincoln Manor? I'm sorry? Is that what this court did in Lincoln Manor? Well, in Lincoln Manor, it came up and that was the issue in the case is that Lincoln Manor was arguing that the director lost jurisdiction to issue a decision recognizing the 120-day violation and this court did in fact vacate that decision. And the circuit court had ruled also that the director had lost jurisdiction. And frankly, I believe that the circuit court had vacated the administrative decision and this court affirmed that. I believe that that was resolved. Yeah, I did affirm that. I just read that. You're correct. We have, in this case, we have a different situation where it was not brought up in the circuit court for whatever reason and we're dealing with it on appeal and again, this is not pleasant. But that's why I think, Justice Turner, the result here would be a little bit different than it was in Lincoln Manor. Thank you for that clarification. But case law holds that if an administrative decision is void or a circuit court decision is void, that the only thing to do by the reviewing court is to vacate that decision and act as if the decision was never made. And that's why if this court finds that Lincoln Manor is dispositive, we ask that certainly the circuit court decision should be vacated and unfortunately the administrative decision as well. Mr. Maher, on behalf of Rosewood, in his reply brief, I'm sorry, in his appellee brief, has argued that this is a moot case. And because of mootness, there are exceptions that would allow this court to rule on the merits. As we argued in our reply brief, this is not a moot case. This is, if anything, it is a void case, void from the beginning. A moot case is where a controversy once existed but no longer does. And certainly exceptions apply to mootness. This is not a moot case. It's different. And so there are no exceptions to allow a court to rule on the merits of a decision that has been declared void. Even in cases where courts have found a decision moot, courts have said that it is appropriate to vacate that decision rather than rule on the merits. I would like to, assuming that this court does rule on the merits, I would like to address the statutory construction issue on the amount of fines that the department can levy. Section 3305 of the Act says that when there are violations of the Act, the nursing home should get a conditional license, and the department can fine the facility based on two different formulas. The court can use a per-resident, per-day formula for a violation that continues, or a fine of not less than $10,000, whichever is greater. The circuit court said that the not less than $10,000 meant $10,000. Our position is that not less than does not mean equal to, does not mean the same as, or only. And this court in the Coleman case looked at, under the Controlled Substance Abuse Act, similar language on not less than, and said that that means at least equal to that amount of the statutory fine. But the Street Value Fine Act doesn't contain any language that includes whichever is greater. I'm sorry, could you repeat that please? You're citing the Coleman case, which was a street value fine case. Yes. But that statute doesn't contain the language whichever is greater. It does not. It does not, and we recognize that. But we think that the critical language here is the not less than. And what the circuit court did was read, by looking at whichever is greater, read out of the statute and make meaningless the phrase not less than. And in our brief, we gave an example of how the per-resident, per-day figure could be greater than a flat fine. How would that be? Well, depending on the number of residents in a nursing home and depending on the length of the violation, and I think that our example gave a resident, a nursing home with 150 residents, and a violation that once the department finds the violation continues for six months, that the fine there would be over $6,000. Well, if we consider that the department had, regardless of that formula, decided that the type of violation would not warrant more than a $6,000 fine or $5,000 fine, then obviously the per-resident, per-day figure would be greater than the flat fine. And I don't think that the circuit court considered that there would be situations where that could happen. And so we believe that what the circuit court did by saying that the department could fine only $10,000 was to make superfluous the not less than $10,000. But interpreting it your way, it makes superfluous whichever is greater, because the flat rate fine could always be greater than the per diem fine. Not in the example that I gave, Your Honor. And, again, if the department looked at a violation and determined, this seems to be a $6,000 fine compared with what the department has fined other facilities and the severity of the facility and the diligence in correcting the violation. But that's all discretionary. That's discretionary with the department. Well, if the department is correct that, let's say, the statute also allows for not less than $5,000 fine. And if the department used its discretion and decided that a facility should be fined $6,000. And if the violation continued for six months, that fine would be over $6,000 and whichever greater language would be given effect in that situation. And the circuit court's decision means that there could never be a situation where the formula fine would be greater than the flat rate fine. And that simply wouldn't be true. I'm not following your argument, because it seems to me that the circuit court was making that very point. Because the flat rate fine, under your interpretation, could be any amount as long as it was not less than $10,000, you could always peg it to an amount greater than the per diem rate turned out to be. Again, depending on, and the per diem is based on number of residents and the length of the violation, how long that violation occurs. I understand that. There's a finite end at some point. If it goes on for six months and the facility has 150 people, I mean certainly the formula fine could be greater than a fine that otherwise, had it been corrected right away, would have been less than the formula. Well, why is that? I don't understand why you're saying that. Because if you look at the language the way you're saying it should be interpreted, as long as the fine wasn't less than $10,000, the department could assess, take both methodologies, look at what the per diem fine came to. Let's say it came to $150,000. What prevents the department from issuing a fine for $200,000? Well, I mean certainly constitutional limitations would apply, but the department, if it based its fine, its flat rate fine, on what it has fined other facilities, the history of this facility, the diligence in correcting violations and that kind of thing, if it came up with, and the example I used was for the not less than $5,000 fine. Let's just use that as an example. And if the department said, well, this is probably based on other facilities and this facility, we would fine this facility $6,000. But because of the length of the violation and it went on for so long, the formula fine would be more than the flat rate fine that the department otherwise would have assessed the facility. And I think that as long as there's any example that would give meaning to all of the language in the statute, then the circuit court was wrong to find that there could never be a situation where the formula would be greater than the flat rate fine. Was the department required to issue regulations that would support the issuance of a fine greater than $10,000? There was an issue in this case about how the department assessed fines before and we did not challenge the court's decision on that. And there are, I know that the department was going to kind of revisit that in terms of regulations, but we have Section 3306 of the statute that gives the department factors to assess when determining what the fine should be. My question to you is were regulations required to be enacted and adopted to guide the department's decision to issue a fine more than $10,000? Because it seems to me you didn't challenge that portion of the circuit court's order and by conceding that and conceding that the attorney's fees that were issued by the trial court were appropriate, it seems to me that you're conceding regulations were required. Rules and regulations, and there weren't any, were there? The problem was with the $20,000 schedule that the department was using. First of all, there were no regulations. And second of all, I don't know that the statute would have supported that each and every case starts with a $20,000 fine. The statute says start with $10,000 as long as it's not less than $10,000. And again, the statute gives the agency factors to determine what an appropriate fine for this facility is. So we're not saying that there needs to be a regulation that says we can assess a $20,000 fine in every case. What we're saying is that the discretion given the department, I believe, is given by the legislature under Section 3-306 where it lists factors that the department should consider in determining what the fine should be. And I think if we look at those factors, there need not be a regulation. Then why didn't you challenge that portion of the court's order that found that way? Because in order to violate the Administrative Procedure Act, it's not just whether you have a regulation that violates the statute. It's whether you have a policy and procedure that violates the statute. And so it wasn't that there should be a regulation that said it was $20,000. It was that the department was using a policy that, first of all, wasn't promulgated as a rule, and second of all, wasn't allowed by the statute. Okay. So if we got to the merits of this case and got over the jurisdictional hump, I guess the question is, how do you win when you concede that this was discretionary on the part of the department and they didn't adopt a written policy that expressed to the world this is what they were going to be doing? Well, I think that there's a difference between a discretionary decision by the department that looks at each facility on an individual basis and the department saying in each case we're going to fine a facility $20,000. I think that there's a big difference between those two. And the latter is what we were dealing with in the circuit court. And the circuit court said that was a policy and it violated the Administrative Procedure Act, and we did not challenge that. But that's not to suggest that the department couldn't use its discretion, using the statutory factors, to fine a facility any amount more than $10,000 depending on the facts of that particular case. And that's far different from the department saying in each case we're going to fine a facility $20,000 as a minimum. Does that really help? Maybe that helps my colleagues, I don't know. Your Honors, I think I will address whatever else needs to be addressed once we hear from Mr. Maher. Thank you. Thank you, Ms. Youth. Mr. Maher. May it please the Court, my name is Daniel Maher. I'm the attorney for Rosewood Care Facility. I think the initial issue to be decided by this Court in this case is the effect of the department's failure to issue a decision within 120 days, and obviously that's troubling the Court. The department's position, I think, is best set forth, and I don't want to read too much. It says, if Lincoln Manor and Francis House control this case, and the acting director's decision is void from the start as opposed to being moved, and as stated previously, if an administrator's decision is void from the beginning, then it cannot be subject to review under the Administrative Review Law. With all due respect to opposing counsel, I don't think that's a correct statement of the law. If you agree with that proposition, then the department's decision-making process is effectively insulated from review by these courts, by the courts. If we raise issues in an administrative procedure, which the department says, well, wait a minute, maybe they have something there, they can simply wait the 120 days and say, you don't have the opportunity, nursing home, to raise those issues in the trial court or get review in this court. Why do you care, Mr. Maher, if the end result is that your case for your client, who you're representing, goes away? Why is that important to you? The easy answer to that is, Judge, I have 13 nursing homes in the Rosewood chain, and I've got other cases where they're fining me above the $10,000 statutory minimum. Right, and you can take an administrative review from those, and if they issue their decision timely, you'll get review of the issue. But the issues are not going to change, Judge, and I think that's why the issue here is not whether or not the order is void, but whether the issues we raise in this case are subject to review, again, by this court. And my point is, they're not moved, regardless of what happened with this order. But how are they reviewable if, under Francis House and Lincoln Manor, there's no jurisdiction to consider the order of the department? It's certainly a conundrum for me, Judge, but I think the answer is this. The Administrative Review Act sets up a policy and a procedure by which state agency decisions can be reviewed. In this case, we had a decision on the merits, we took it up on administrative review, summons was issued, the whole Administrative Procedures Act was followed. We came up, or Administrative Review Act, we came up on this appeal. We raised these issues before the administrative body got a ruling for them. They can't be insulated from their conduct, they can't use it as a sword against me, when I've raised the issues, and I should be allowed to take these issues up to court. Presumably, and again, presumably I could file some sort of mandamus action and say you're acting outside your authority under the statute. As I read this court's decision in Crenn, because the Nursing Home Care Act has a requirement in it that any decision they make be reviewed under the Administrative Review Act, I can't do that. I don't believe, under agency authority, they have a right to make me take every case to trial where they find us above $10,000. What happens in the next case? We have the same arguments, it's a $50,000 case, we have the same arguments, and I'm back in circuit court arguing the same thing again, and I spend another $22,000 bringing the case to trial. I don't think that's the way the Administrative Procedures Act works. Well, you could have gotten dismissal in the circuit court if you'd have raised the issue and presented the Lincoln Manor case. There's no question that was bad lowering on my part. I should have filed that case and I should have cited it to the trial court. And it may be that the trial court would have said, you're right, Mr. Maher, Lincoln and Francis House are the cases that decide this case and I don't have to decide those other issues. But, in fact, they did. I agree, Judge, it's a conundrum, but it's not a conundrum that we caused or not an issue that we caused by not following the Administrative Procedures Act. I guess my only point is if it is jurisdictional and the initial order is void, there's nothing for us to review if we follow those cases. My answer to that, Judge, would be, as I read the Administrative Review Act, it sets up a whole system that the legislature has approved that allows me to review decisions issued by the administrative agencies. And I think that trumps any issues about the jurisdictional because, again, Judge, I think these issues that we raised are not. I don't think mootness is the issue. Go ahead, Mr. Maher. My point would be, six months from now, we're going to be here on the same case saying, wait a minute, this 3-305 doesn't allow you to impose flat fines for a single type A violation above $10,000. And that's going to be true whether or not they promulgate rules in this case, based on this case or not. If they come back later on and say, these are the factors we're going to look at. Anytime somebody goes from a Stage 1 to a Stage 4 decubitus ulcer, we're going to fine the nursing home $20,000 on a flat rate. I'm going to raise the same issues with this court. I'm going to say, wait a minute, the way 3-305 should be read is you have two methodologies, which the departments agreed with. One's the daily fine, based on $5 a day and the number of the residents in the facility, or a $5,000 or $10,000 fine dependent on the harm that's claimed by the department. If I get a fine that says, here's a $20,000 fine, and it's not based on the daily rate methodology, I'm going to be right back into trial court saying they're not reading the statute correctly. And I think both briefs correctly set out what the correct maxims about statutory interpretation. They're all there. My point is, and I think Justice Pope is what you were getting at, they say not less than is read exclusively and whichever is greater is read out of the statute. And I don't believe that's the correct way to read the statute. You have to give some meaning to the clause, whichever is greater. And the way you give it meaning... I was just going to ask you if you agreed with Ms. Hughes' example of how the per diem, the daily rate fine, could exceed a flat rate fine. With all due respect, I didn't understand that example. And I think the examples I put forth in my brief are the better examples. The department goes in, they look at a situation. They say, this is great bodily injury and actual harm. So it's an A violation. At a flat rate, it's $10,000. If they do their calculations about the number of residents in the facilities and the number of days, and that fines $150,000, they fine us $150,000. They've used our methodology. They've picked it out. The statute says you pick out whichever is greater between those two methodologies. If it's $150,000, that's my fine. Now, I may be arguing under 3-306 that that amount of fine is too much. I might say, well, wait a minute. We corrected that problem much earlier in the... You say it's six months that the violation ran. Well, here are my end services. Here's what I did to teach my people, my nurses and my staff. It's not six months. It's not 180 days.  So your calculations are... But that's all fact driven. That's all fact driven. But that's just an example. I mean, there's a number of examples where you have to look at the two amounts of the fines and how they're calculated, and then my defense changes to that. But what I'm getting at with you is I understand that's your interpretation. But Ms. Hughes's interpretation for the state is that that flat rate fine could be not less than $10,000, so it could be any number over $10,000 as long as it was within constitutional proportion. And so my question to her was, when would the flat rate fine ever not exceed the per diem fine? Under their theory. Under their theory, Judge. They have, as I understand it, and if I understand your question correctly, they have absolute discretion to say the fines, $50,000, $100,000, $200,000. And I don't have any way to peer into the department's mind to say, how did you come up with that number? If I've got a daily rate methodology, I have that calculation. They tell me it's 180 days, and I say, well, wait a minute. It only should be 30 days. If it's a flat rate fine of $200,000 because your conduct is so egregious, then I'm left saying, well, how did you come up with the $200,000? And I think that kind of discretion raises constitutional issues. I have no method of determining how the department set that amount of fine or what factors they used if they give me a flat rate fine that says your fine's $100,000 in this case, or your fine's $50,000 in this case. I have no way of knowing. I have no way of presenting a defense to that case because someone sitting in a room at 535 West Jefferson decided this was the amount of fine in this case. And quite frankly, I think that's what happened when they decided that they would have an enhanced system of fines. Mr. Siegel's testimony, who's the associate director, no, he's not an associate director. He's head of their technical staff. He said, I met with the lawyers from the Illinois Department of Public Health. I met with the administrative staff, the top officials, and we met with legal staff. And we decided we were going to increase these fines. They didn't promulgate any rules. They didn't promulgate any regulations. They said, based on our internal discretion, with no memos, no rules, no regulations, this is how we're going to start fining these nursing homes. Did you look at any legislative history that deals with this language, if not less than $10,000, whichever is greater? I did, and I could find no legislative history when the Nursing Home Care Act was first passed. I know it's based off of the New York statute, and I'll take that back. It's based off the New York statute, but I don't think I looked at the New York statutes at all. I do want to point out to the court that the effect of this enhanced system of fines was not de minimis. In 2005, the total amount of fines that I calculated for single type A violations, using the department records, was $1.2 million, or around there. And you look at 2006, that number jumped to almost $3.2 million. So there's a $2 million increase in the amount of fines levied on nursing homes for single type A violations. So it's not a de minimis amount of money. And presumably, without this case, or without the court saying, wait a minute, you can't operate in this manner, you can't violate the Administrative Procedures Act, you have to read the statute correctly when you're imposing these fines, we'd still be racking up fines like that. And not just my nursing homes, any nursing home in the state. Ms. Hughes says, though, that the statute itself contains the factors that guide the discretion of the department in assessing the fine, and that rules and regulations weren't necessary, although maybe a written policy would have been necessary. I assume that's what their position is, and why they conceded that the trial court was correct on those issues. Is your position different than hers? It is. Okay, and what's the basis? Is it because any time an agency seeks to exercise discretion under JCAR, they're supposed to have rules and regulations that are published? Two things, Judge, and before I lose my train of thought, let me say this. I think they've admitted that they didn't follow the Administrative Procedures Act. Having said that, the way I read 3-305 and 306 together is that once they make the determination of what the fine is, I can then defend that amount of fine based on those factors. And two things tell you that, or at least tell me that. One, if you look at the charging document, which is the 2567 or the Statement of Deficiencies, it says we're assessing this penalty under 45-3-305. It doesn't say anything about 45-3-306. The Department has said our authority to fine you here is based on 45-3-305. When we get the packets from the Department, there's never any analysis done under 3-306 that I've ever gotten from the Department. What 3-306 means to me is I can then come in and say you haven't properly considered these factors. For instance, Judge, if I've got a daily fine that's $100,000 and they say it's a 6-month period, the example I just made, I say wait a minute, it should only be 30 days. And here's my proof why it should only be 30 days. You know, you say it's a medication error, medication errors are continuing. Here's my 30 days I brought in pharmacists and professionals and we unserviced all our people and we now give medications the right way. I can make that argument to the Department and presumably I can make this argument to the reviewing court saying they fined us under 3-305, they didn't properly consider this factor under 3-306. It's not 180 days of fines at $5 a day plus the number of residents, it should only be 30 days. So 3-306 has always been read in that manner is my understanding. The other thing I would point out to the court with regards to that question is it's clear from Mr. Siegel's testimony and he used to be a prosecutor with the Department that their longstanding practice prior to 2006 when they decided to implement this system of enhanced fines, their procedures or their policy was only to fine $5,000 and $10,000. So they never considered 3-306 when they were considering 3-305. The practice has always been $5,000 or $10,000. I think that's clear from Mr. Siegel's testimony in the case. So the answer to the question is I don't think 3-306 gives them the discretion to start imposing fines without more rules and regulations. And I think again, Judge, I read their brief as admitting that. I guess again back to the mootness issue and I understand the court's problem with the jurisdictional on this. Again, there's no question that we're going to be back here again if we don't get the proper interpretation of this statute. The Department's position is diametrically opposed to the way Rosebud reads the statute and certainly diametrically opposed to the way the trial court read the statute. And when you're looking at this statute I think it's clear under the rules of interpretation that we have that that's the correct way to do it. You can give weight to the clause not less than and whichever is greater by reading them in conjunction and saying once the Department picks the methodology then they set the amount of the fine based on whichever number is greater depending on which methodology they use. And those are the examples I set forth in my brief. I know Mrs. Hughes and her department in its brief argues that the legislative intent of the Nursing Home Care Act is to protect the residents in the facility. And we need the discretion, the Department needs the discretion to raise the fines above these minimums or above these maximums so they can better protect the residents. Well, I will stand here today and I'll tell you based on my reading of the statute and I think every nursing home operator's reading of the statute we all understand that the Nursing Home Care Act was instituted to protect the vulnerable residents in the facility. There's no question about that. However, having said that once you say the intent is to protect them and the way the Department is interpreting the statute they say they have the absolute discretion to impose any amount in a flat fine that they want. And there's always going to be some conduct that someone at 535 West Jefferson where IDPH is that's going to say that conduct's worse than the last one and I fine them $100,000 in that case and this one ought to be $200,000 and the next one's $300,000 and the next one's $500,000. Is it your position, Mr. Maher, that the legislature would have to change the statute to allow fines above $10,000 for a flat rate fine? That's right. So no amount of rules or regulations that they promulgated would enable the Department, in your opinion, to assess a flat rate fine greater than $10,000? The per diem fine could be greater than $10,000 but not the flat rate fine. That's correct, Your Honor. And the place they have to go to do that is across the street and not here. And I think that's the correct interpretation of the statute based on the Department's longstanding practice and that's the way they've always done it. They fine us $5,000 and $10,000 for flat fines. And Mr. Siegel in his testimony indicated that that was their practice. The issues about the violation of the Administrative Procedures Act, clearly I read the IDPH brief as admitting that they violated the Administrative Procedures Act. And that's because of what? Because they didn't promulgate any rules regarding their system of enhanced fines. And I'll give you a perfect example in this case, Judge. Mr. Siegel indicated that if a facility has a past history of an A violation in the last three years, that would automatically bump the fine an additional $5,000. No rule, no regulation, nothing promulgated under that. As part of my defense of this case, I got from a Freedom of Information Act request a list of all the violations for Rosewood of Peoria. And I said to Mr. Siegel, when he testified to that, look at your records and tell me where that A violation is. It gives you the right to bump us an extra $5,000. He said, I don't see it here. And the Administrative Law Judge said, I'm going to reduce it $5,000 based on that testimony. Now, I had asked for those records for purposes of showing our compliance with the individual sections that we were cited under. And again, going back to 3.306, I can say the fine shouldn't be $25,000 because you have never cited us with a violation of pressure ulcer. So my thought would be that would be a reduction in the fine. If I hadn't thought that way, I wouldn't have had the documents there to show Mr. Siegel the error in bumping it an extra $5,000. That's an unpromulgated rule by the Department saying, I'm going to fine you an extra $5,000 based on your past history. Where's that at? How do I know that's part of this case? I don't get it in any Department document. I get a notice of violation that says the fine is $25,000. You figure out how we got there, Mr. Monner. So, to me, that's an unpromulgated rule by the Department of Public Health. And that's a violation of the Administrative Procedures Act. And I think they've admitted that. And it's one of the things that I find most bothersome about this case that they can say, well, wait, we waited 120 days, so we don't have jurisdiction, but we've admitted that we violated the Administrative Procedures Act, at least the way I read it. The issue with the attorney's fees judge, obviously I think the reason that the Administrative Procedures Act is in place and someone who brings to the court's attention and gets a court ruling that, yes, the state agencies violated the Administrative Procedures Act, is to deter just such conduct that we have here. We don't have a bunch of state agency officials sitting in a room saying, we have to enhance the system of fines that we fine against people. That's not the way business is supposed to be conducted by a state agency. They don't get to sit in a room and decide, I'm going to increase the amount of fines, and the amount of fines is almost $2 million a year, and then say, sorry, you don't have any opportunity to have judicial review of that. I can see my time's about up. I thank the court for its time. If there are any other questions, I'd be happy to answer them. Thank you. Thank you. Your Honors, as you know and as you pointed out, we did not challenge the Circuit Court's decision regarding the practice and policy of fining facilities $20,000 or $25,000. So I don't know why Mr. Maher is talking about that issue. We did not challenge that. We did not challenge the attorney's fees that were awarded. What did happen was when we discovered the length of time that the department took to issue its decision, we raised that issue before the court and argued that based on Lincoln Manor and Francis House, if that is the precedent, then the decision is void. And Mr. Maher talks about his right under the administrative review law to seek review of an agency decision that affects his client. But if an administrative decision is void and should be vacated, there is no adverse effect against his client. And although he has the right to bring an administrative review action to raise that issue, which is what happened in Francis House and Lincoln Manor, that didn't happen here. And so there was no adverse effect if this decision is void against his client. So when he talks about, you know, he would have no, the department could just wait more than 120 days, issue a decision, and then he couldn't seek review. I mean, that isn't right. Certainly whenever the department issued its decision, the administrative review law gave him the right to go into circuit court at that point. That has, his right to seek review has nothing to do with how long the agency took to issue its decision. The merits of that, whether it's void and should be vacated, could be raised in the circuit court. It was not done here. But if the decision is void, there's no adverse effect against his client. Did you represent the department in the trial court? Did you represent the department in the trial court? I did not. And regarding the department's discretion to assess fines, the legislature has given the department that discretion when it said in the statute that it shall assess a fine of not less than $10,000. It did not say $10,000. It did not say only $10,000, no more than $10,000. It said not less than $10,000. When you read that language with the language in Section 3306, which lists factors for the department to consider when deciding whether to assess a fine and in fixing the fine, in determining how much of the fine should be assessed, that reads together and shows that the department has the authority to fine a facility more than $10,000. Certainly, the Department of Public Health is no different than many other state agencies that have discretion to fine in certain situations. I have an English question. Does not a comma following a series mean that that which follows the comma modifies all three of the items in the series? Let me look at the section 3306. No, actually, I'm talking about the prior section where it's comma whichever is greater. So it's 3305, is it not? There's a comma after $10,000. Right. So does that comma not mean whichever is greater modifies those three options that preceded? I think it's best read. When you look at the plain language, that the department has two ways to assess a fine, on the formula or the flat rate. And the flat rate breaks down into two subcategories, $5,000 or $10,000, depending on the type of violation it is. In each case, $5,000 and $10,000, that is preceded by the language not less than. And so I believe reading this, what the legislature intended was first you have to determine what type of violation it is. And if it's a $5,000 violation, then the department has the authority to look at the formula rate or the flat rate of not less than $5,000. And again, if it's a type of violation that would warrant the $10,000 part of the statute, again, the department has the authority to determine the fine based on the formula or not less than $10,000. And I think that that is how best to use all of the language of the statute and also give effect to the factors in 3306. And just one more thing, I started to say that this is not unique, that the Department of Public Health has the authority and the discretion to determine an appropriate fine based on the pertinent facts of the case. The Department of Professional Regulation also has discretion to, when they find that a doctor, for example, has violated the Medical Practice Act, to determine what that fine is. And certainly we have been involved in cases upholding fines and arguing that the fine was not arbitrary because it was based on factors such as the severity of the violation, had the doctor violated the act in the past, and those sorts of things. And those are the same types of factors that would be involved in the next case that comes along when the department determines to fine a facility not less than $10,000. We would ask that you, if you determine that Lincoln Manor is dispositive, that you vacate both the circuit court and the administrative decision. We are not happy with that result, obviously. The court determines that this case is distinguished from Lincoln Manor to affirm the circuit court's finding that there was a violation and vacate its decision regarding the amount of the fine. Thank you.